UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GUY MALOON, II,                )
                               )
        Plaintiff,              )
                               )
v.                             )        No. 1:09-cv-251-JAW
                               )
SOCIAL SECURITY ADMINISTATION  )
COMMISSIONER,                  )
                               )
        Defendant               )

**REPORT AND RECOMMENDED DECISION**

The Social Security Commissioner found that Guy Maloon, II, a young man[1] with attention deficit hyperactivity disorder, mood disorder, learning disorder, and a history of polysubstance abuse, has a residual functional capacity that enables him to perform a full range of work at all exertional levels, subject to the non-exertional limitations of only unskilled and "low stress" work and denied his application for disability benefits and supplemental security income under Title II and Title XVI of the Social Security Act. Maloon commenced this civil action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), alleging errors at Steps 4 and 5 of the sequential evaluation process and an absence of substantial evidence in support of the Administrative Law Judge's related findings. Although it is clear that Mr. Maloon has some significant challenges arising from psychological and environmental factors, there is substantial evidence supporting the assessment that he can engage in substantial gainful employment. I recommend that the Court affirm.

---

[1]     Maloon was 15 on his alleged onset date of May 1, 2006.

## Standard of Review

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion of Plaintiff's Statement of Errors

The Administrative Law Judge, whose decision is the Commissioner's final decision for purposes of judicial review, found that Maloon does not suffer from any physical impairment and restricted his Step 2 and Step 4 findings to certain mental impairments. (Finding 4, R. 10; Finding 6, R. 11.) Maloon does not take issue with the omission of any physical impairment.[2] The Administrative Law Judge found the following mental impairments were demonstrated by the record: attention deficit hyperactivity disorder, mood disorder, learning disorder, and a history of polysubstance abuse. (R. 10.) Maloon does not argue that the Administrative Law Judge omitted any severe mental impairment from his Step 2 finding. The Administrative Law Judge found that no listing was satisfied. (Finding 5, R. 10-11.) This issue is not challenged, either, which takes the focus to Step 4.

---

[2] Maloon argues that the Administrative Law Judge failed to fully consider his subjective complaint of pain (Statement of Errors at 15.) Assuming for the sake of argument that this statement of error implicates his alleged back pain, the Administrative Law Judge found that there is no radiological evidence of an underlying disorder and that physical examination has not revealed any neurological deficit. Maloon's Statement of Errors fails to challenge this finding. Without proof of an underlying medically determinable impairment, the back pain issue is by the boards. 20 C.F.R. §§ 404.1529(b), 416.929(b).

**A.    Step 4**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work.  If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled."  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At Step 4 the burden of proof rests with the claimant to demonstrate that his residual functional capacity does not enable him to engage in his past relevant work.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987);  20 C.F.R. §§ 404.1520(f), 416.920(f).  Past relevant work was not a factor in this case because Maloon has no past relevant work.  (Finding 7, R. 14.)

Beyond proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding.  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2);  *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003).  This is both a burden of production and a burden of persuasion and it remains with the claimant through Step 4, where the claimant must demonstrate an inability to perform his or her past relevant work, if any.  68 Fed. Reg. 51,153, 51,155.

The Administrative Law Judge's RFC finding is as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations:  he can do no more than unskilled work (specific vocational preparation level 1 or 2, per the Dictionary of Occupational Titles); and is restricted to low stress work, defined as work which requires no more than occasional decision-making and judgment, not interaction with the public, and no more than occasional interaction with coworkers and supervisors.

(Finding 6, R. 11.)

In support of his claim that he is disabled by mental impairments, Maloon submitted evidence of a four-month stint in 2006 of outpatient counseling with the Acadia Hospital, commencing with an emergency evaluation for feeling as if he was going in 100 different directions, on which visit he was assessed as having a GAF of 35. (Ex. 9F, R. 321, 324.) Acadia "discharged" Maloon in June 2007, after an extended practice of cancelling or not presenting himself for appointments subsequent to September 2006. (R. 298.) Maloon's treatment has historically focused on mood and anxiety management by means of mood-altering drugs, which he first received as a schoolboy. Maloon has consistently complained that the drugs have failed to stabilize his mood, as he highlights in his memorandum. (Statement of Errors at 6.) However, there is evidence that Paxil has worked well for him, based on a 2007 trial, but Maloon does not take it because it causes sexual dysfunction. (R. at 332, 333, 335, 336, 363.) Maloon also reported, as of February 2008, that Concerta worked even better for him than Paxil. (R. 437.)

In July 2007, Maloon was referred to Community Health and Counseling Services and reported a break up with his girlfriend, concern by his mother because of past suicidal ideation (crossed out and marked as void on the evaluation form), and polysubstance abuse with a desire to detoxify through outpatient care involving medications alone. The form states that Maloon "tried to hang self w/ cord last weekend end [sic] was intoxicated." (R. 345.)

A July 13, 2007, office note from his primary care nurse practitioner Bailly-Ford relates a report of attempted hanging with an electrical wire hanging from the ceiling. (R. 333.) There is an associated July 12 emergency room report that also contains evidence of self-cutting. (R. 329-30.) Additionally, Maloon presented for emergency care with alleged suicidal thoughts and self-cutting behavior in March 2007. (R. 286.) Each episode of suicidal ideation arose from a breakdown in a relationship with a girlfriend. (R. 286, 330.)

4

All of these medical records were considered by consulting physician David Houston, Ph.D., who performed a psychiatric review and mental residual functional capacity assessment in November 2007 (Exs. 14F & 15F). Dr. Houston's psychiatric review indicated that Maloon's ADHD and mood disorder fall under the organic mental disorder and affective disorder categories of the listings and reflect mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, plus one or two episodes of decompensation, without meeting the criteria of any listing. (Ex. 14F, R. 365, 367, 374, 376.) Dr. Houston also completed a corresponding mental residual functional capacity assessment form. In it he identified an absence of significant limitation in many areas, as many moderate limitations, and no marked limitations. (Ex. 15F, R. 378-79.) In his concluding assessment, Dr. Houston opined that mood disorder and ADHD are present, but that bipolar disorder is not supported. (R. 380.) With respect to understanding and memory, he indicated that Maloon can understand and remember simple instructions and that any problems with comprehension are not significant. He also indicated that Maloon can carry out simple tasks, can interact with co-workers and supervisors, and can adapt to simple changes. (Id.) Dr. Houston's Mental RFC Assessment supports the Administrative Law Judge's RFC finding.[3]

Maloon faults the Administrative Law Judge's failure to rely on a mental assessment offered by LCSW David Goolsby of the Charlotte White Center, or function report prepared by

---

[3] Maloon argues that the Administrative Law Judge failed to account for Dr. Houston's assessment of certain moderate limitations in his Step 5 finding. (Statement of Errors at 26.) At oral argument, the Commissioner's counsel argued that only part III of Dr. Houston's mental RFC assessment constitutes his functional capacity assessment, citing Lichtenstein v. Barnhart, Civ. No. 05-111-P-H, 2006 WL 1554630, *3, 2006 U.S. Dist. Lexis 35855, *8-9 (D. Me. June 1, 2006). I agree with the Commissioner's position and with the analysis set forth by Magistrate Judge Cohen in his Lichtenstein report and recommended decision and by Magistrate Judge Rich in Eaton v. Astrue, Civ. No. 07-188-B-W, 2008 WL 4849327, *7, 2008 U.S. Dist. Lexis 91457, *21-22 (D. Me. Nov. 6, 2008), aff'd over obj., 2008 WL 5093834, 2008 U.S. Dist. Lexis 91457 (Dec. 1, 2008) (Woodcock, J.)

Maloon's Charlotte White caseworker, Ella Weeks, and an alleged failure by the Administrative Law Judge to adequately evaluate Maloon's subjective complaints about his mental inabilities.

### 1. *David Goolsby's Medical Source Statement*

From April 2008 through June 2008, Maloon went to Charlotte White Center seeking treatment, and a diagnosis, explaining his history to David Goolsby, a licensed clinical social worker, over the course of three sessions, expressing a desire to be diagnosed for the right things so he can get medication for it, and also indicating he was present "for his lawyer" to support a disability application. (Ex. 20F, R. 414.) Charlotte White terminated services in June 2008 indicating that Maloon anticipated a period of incarceration at the end of the month, but also indicating a willingness to work with him again when he is ready to continue. (Id.)

On December 11, 2008, Goolsby completed a medical source statement indicating the presence of marked limitation with respect to ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration through a work day; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to work in coordination with or proximity to others without distraction; ability to complete a normal work day and work week without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods; ability to interact appropriately with the public; ability to accept instructions and criticism from supervisors; ability to be aware of normal hazards and take appropriate precautions; ability to travel; and ability to set realistic goals and make plans independently. (Ex. 23F, R. 446.) This assessment was limited to the period of time associated with Maloon's course of treatment with LCSW Goolsby's from April 8, 2008 through early May 2, 2008. (Id.)

The Administrative Law Judge discredited the assessment of marked limitations in the areas in question, explaining that Goolsby had only limited contact with Maloon and finding that the opinion of Dr. Houston was more reliable based on various factors the Administrative Law Judge found to be inconsistent with a disabling mental condition, including failure to accept repeated offers of counseling services, failure to persist in any course of treatment—whether in the form of counseling or medications reported to be beneficial—and the absence of longitudinal complaints of severe psychological impairment. (R. 25-27.) These are valid grounds for discrediting an assessment offered by a treating medical source, let alone a source that has been given little opportunity to provide treatment. An administrative law judge simply need not accept RFC opinions from a treating source when there is other substantial evidence in the record that conflicts with it. 20 C.F.R. § 404.1527(d)(2).

 2. *Ella Weeks's Third-Party Function Report*

Maloon says the Administrative Law Judge erred when he failed to mention or address the opinion of Maloon's long-time caseworker, Ella Weeks. (Statement of Errors at 19, 22.) Ms. Weeks is a Behavioral Specialist with Charlotte White who began working with Maloon in 1993, the year in which Maloon turned 5. (Ex. 8E, R. 196.) Ms. Weeks offers various descriptions of Maloon, some of which are not reflected in the medical records. She relates that sometimes Maloon has required prompts to complete tasks or remember appointments. (R. 198, 200.) He also gets confused, frustrated, and angry with others, gives up too readily, has trouble with authority, and does not handle stress well. (R. 201-202.) He watches television most of the day. (R. 200.) He has cut himself out of frustration or other emotional stimuli. (R. 202.)

Assuming for the sake of argument that Ms. Weeks's function report is evidence from a medical source and that 20 C.F.R. § 404.1527(d) and SSR 06-03p called upon the Administrative

7

Law Judge to evaluate her statements, any error was harmless. Ms. Weeks's descriptions do not suggest more than moderate limitations and would not tend to countermand any aspect of Dr. Houston's mental RFC assessment.

   *3. Maloon's Subjective Complaints*

Maloon argues that the Administrative Law Judge erred (1) because he failed to ask Maloon about his activities of daily living in order to discern whether Maloon's alleged pain amounts to an additional limitation and (2) because he failed to inquire of Maloon at the hearing about his efforts to seek or pursue regular medical treatment. (Statement of Errors at 15-18.) Maloon cites Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986), in support of the former argument and SSR 96-7p in support of the latter. (Id. at 15-16.)

The Avery opinion instructs that an adjudicator "be aware that symptoms, such as pain, can result in greater severity of impairment than may be clearly demonstrated by the objective physical manifestations of a disorder," Avery, 797 F.2d at 23 (citation and internal quotation marks omitted), and that the adjudicator must *consider* the claimant's "full description," including work record, daily activities, and any additional statements from the claimant. Id. Avery does not hold, however, that the adjudicator errs if he or she fails to offer findings concerning the actual scope of a claimant's daily activities. Here, the Administrative Law Judge considered what the evidence revealed about activities of daily living and he found that the evidence failed to establish that Maloon is unable to carry out everyday tasks in an effective, independent manner.[4] (R. 24.) He also acknowledged Maloon's non-cumulative subjective complaints in his decision, including Maloon's report of throwing and punching objects in anger,

---

[4] The Administrative Law Judge did ask about daily activities, but Maloon essentially indicated that all he does is smoke cigarettes, watch television, pace the floor, and nap from time to time. (R. 46.)

the fact that he is not allowed to see one of his children because of his instability, prior incarceration for breaking and entering, a prior discharge from employment on account of failing to follow directions, and difficulty getting along with a boss and coworkers. (R. 25.) The Administrative Law Judge found that this additional evidence did not reflect more than moderate impairment as far as work ability is concerned. I fail to see how these subjective representations would compel a more claimant-favorable finding. Moreover, the Administrative Law Judge's credibility assessment, already discussed, is within the bounds of reasonableness, though it is challenged in one more respect.

Maloon alleges error with respect to the Administrative Law Judge's assessment that his failure to accept offers of counseling treatment or persist with a particular medication make Maloon's subjective complaints less than fully credible. With respect to Maloon's report to one provider that his biggest problems were lack of motivation and focus, the Administrative Law Judge reasoned that Maloon did not make a persuasive case for more than moderate concentration and attention deficits that are resistant to treatment because he showed a poor record of compliance with treatment. (R. 26.)

> According to the Commissioner's Policy Interpretation Rulings:
>
> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.

SSR 96-7p. However, this same Ruling cautions against rushing to draw a negative inference that failure to adhere to a treatment plan undermines an individual's allegations of more severe symptoms.

> However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

Id. This ruling does not rule out drawing a negative inference from the failure to seek or pursue regular treatment, so long as the adjudicator first considers whatever explanation the individual may provide or other evidence tending to explain irregularity. The adjudicator *may* need to raise the issue affirmatively with the claimant, but is not required to do so.

At the hearing, Maloon's counsel anticipated this issue with the following inquiry:

Q  Now, you were taking – they put you on some other medication before, but you didn't like it, right?

A  Yes.

Q  And you didn't take it?

A  No.

Q  Okay. But the Wellbutrin you're taking?

A  Yes.

Q  And the Concerta?

A  Yes.

Q  Okay. And . . . they tried some other medication, correct?

A  Yeah.

Q  And one of them was Seroquel, one of them was Paxil, and I think there were some others before that, but those two at least, and you didn't take those, correct?

> A   No, I took them for a little while, and I stopped.
>
> Q   Okay. But the Wellbutrin you've been taking?
>
> A   Yes.
>
> Q   And can you tell the Judge if that seems to make any difference?
>
> A   No, it doesn't.

(R. 40-41.) Subsequently, Maloon stated to the Administrative Law Judge: "I been on a lot of medications and none of them work." (R. 47.) This testimony is contrary to record evidence demonstrating success with Paxil and also better results with Concerta. There are legitimate credibility concerns in this record and a reasonable mind could draw the negative inference the Administrative Law Judge drew about Maloon's treatment history without belaboring the issue with redundant questions. I recognize, as well, that the hearing transcript does not contain a similar dialogue concerning counseling, but the record does contain evidence that Maloon was able to attend counseling sessions when he thought doing so would advance his disability claim. The Administrative Law Judge's determinations are entitled to deference and are supported by reliable inferences and findings. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

In summary, Dr. Houston's Mental RFC Assessment and the Administrative Law Judge's credibility assessment are substantial evidence in support of the Commissioner's RFC finding. A reasonable person who reviewed the entirety of the record could well accept that Maloon's medical records and his subjective complaints fail to prove an inability to maintain substantial

work activity in a low stress environment that requires only occasional decision-making and judgment, with no public interaction, and only occasional interaction with coworkers and supervisors.

**B.    Step 5**

Maloon's final alleged error relates to his limited literacy. According to Maloon, the evidence conclusively establishes that he cannot read and/or write with sufficient skill to perform the cleaner II[5] job identified by the vocational expert.[6] (Statement of Errors at 23-26.)

At Step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform, other than the claimant's past relevant work. 20 C.F.R. §§ 404.1520(g), 419.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). This burden shift is limited to producing substantial evidence that a reasonable mind would accept as adequate to demonstrate the existence of other work the claimant can do. The Commissioner must prove that the claimant's RFC, age, education, and work experience enable the performance of other substantial work, but the Commissioner does not assume any burden to prove the non-existence of limitations that might foreclose other work. It is the claimant's burden of production and persuasion at Step 4 to prove all relevant limitations concerning residual functional capacity. 68 Fed. Reg. 51,153, 51,155; see also id. at 51,157 ("[W]e are not

---

[5] The Dictionary of Occupational Titles codifies this occupation as 919.687-014. It is specific vocational preparation level 1, medium exertion, and the vocational expert testified that approximately 450 regional jobs exist. (R. 15, 49-50.)

[6] The Administrative Law Judge also asked the vocational expert to offer an opinion as to the amount of the unskilled work base that would be eliminated by Maloon's limitations. The vocational expert stated that he could not answer the question "definitively," to the precise percentage point, but that he could "determine that at least half of the work base would be eroded." (R. 49.) This testimony is less effective than it would be if the vocational expert had indicated that at least half of the work base would remain. I have chosen to evaluate whether the vocational expert supplied substantial evidence in support of the Administrative Law Judge's decision by focusing instead on the specific job he identified.

responsible for providing additional evidence of RFC or for making another RFC assessment at step 5. [W]e use the same RFC assessment at step 5 that we made before we considered . . . step 4, a point in our process at which you have the burdens of production and persuasion.); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2) (same); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (following Commissioner's regulatory assignment of burdens); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citing Yuckert, 482 U.S. at 146 n.5 (stating that the claimant is in the better position to provide information about his or her own medical condition)).

Ordinarily, the Commissioner will meet the Step 5 burden, or not, "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). At hearing the Commissioner must transmit a hypothetical to the vocational expert that corresponds to the claimant's RFC. Id. (explaining that a vocational expert's answer to a hypothetical question is not reliable unless the hypothetical corresponds to conclusions supported by the medical authorities).

Maloon's counsel asked the vocational expert to assume that the hypothetical claimant does not read or write at all. (R. 50.) The vocational expert's response reflects that inability to read and write would foreclose the cleaner job because it requires language skills between grades one and three. (R. 50.) This is defined, according to the vocational expert, as having an ability to read 95 to 120 words per minute and print simple sentences containing subject, verb, object, series of numbers, names, and addresses. (R. 50-51.) The Administrative Law Judge rejected

the assertion that Maloon is "functionally illiterate," citing Exhibit 1F, a collection of middle-school records. (Finding 9, R. 14.) Those records reflect a severe discrepancy between Maloon's ability and achievement in written expression. (R. 232-33.) However, a psycho-educational report completed while Maloon was in eighth grade includes an evaluation that Maloon has low-average verbal reasoning skills and processing speed, reading comprehension equivalent to grade 4.7, spelling equivalent to grade 3.8, and written expression equivalent to grade 2.8. (R. 235, 237-38.) A reasonable mind could well regard these test scores to be the most reliable indicator of Maloon's relative literacy. Because the scores fall within the definition that the Dictionary of Occupational Titles supplies for the cleaner II position, this is substantial evidence in support of the Administrative Law Judge's Step 5 finding.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Administrative Law Judge's decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 16, 2010